IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND C. JAGLOWICZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BETHEL TOWNSHIP, POLICE CHIEF TOM | : | |
| WORRILOW, JOHN CAMERO, III, | : | NO. 15-4902 |
| ED MILES, MILES DAVEY, JEAN | : | |
| STOYER and TODD APPLE | : | |

## MEMORANDUM OPINION

Savage, J.                                                                                                April 14, 2016

Raymond Jaglowicz, who was not reappointed as a police officer in Bethel Township, sued the township, its five supervisors, and its police chief.  His central claim is that his employment was terminated without due process in violation of the Police Tenure Act ("PTA") and the Fourteenth Amendment.[1]

Moving for summary judgment, the defendants argue that Bethel Township's police force was not covered by the PTA and Jaglowicz was not protected by the PTA because he was not a full-time officer.  They contend that without the protection of the PTA, Jaglowicz did not have the required property interest in his employment to establish a due process violation under the Fourteenth Amendment.  They also maintain that Chief Tom Worrilow is not subject to personal liability and the individual defendants are entitled to qualified immunity.

Because there is a factual dispute whether Jaglowicz was a "regular full-time police officer" entitled to protection under the PTA, we shall deny the motion with respect to claims against Bethel Township under the PTA and the Due Process Clause

---

[1] Jaglowicz asserted other claims which he later withdrew or was unable to support.  *See infra at* 3.

of the Fourteenth Amendment.  We shall grant the motion on all remaining claims.  We also conclude that the individual defendants are entitled to qualified immunity.

## Background

Bethel Township appoints its police officers for one-year terms at the township reorganization meeting held each January.[2]  Jaglowicz began his employment with the Bethel Township police force in January 2010,[3] when he was appointed for a one-year term.  He was re-appointed each year until January 2015.[4]  At the 2015 reorganization meeting, the township supervisors voted unanimously to appoint Worrilow as "Part-time Police Chief" and eighteen others as "Part-time Police Officer[s]" for one year.[5] Jaglowicz was not among those appointed.

Jaglowicz contends he was not reappointed because he had used a Taser while arresting a suspect on September 16, 2014.[6]  A citizen's complaint arising out of the incident was filed on October 21, 2014.[7]  During the course of his investigation of the complaint, Chief Worrilow interviewed numerous people, including Jaglowicz.[8]  At no time did Jaglowicz receive notice that Bethel Township intended to terminate his employment or to take disciplinary action.[9]    He was not charged with criminal

---

[2] Mot. for Summ. J. (Doc. No. 22-1) at 3 ¶ 3, 4 ¶ 9.

[3] *Id.* at 3 ¶ 3.

[4] *Id.* at 3 ¶ 3, 4 ¶ 11.

[5] Mot. for Summ. J., Ex. C (Doc. No. 22-2) at 3.

[6] Resp. (Doc. No. 24-1) at 4 ¶¶ 6, 7.

[7] Mot. for Summ. J. at 5 ¶ 17.

[8] Mot. for Summ. J., Ex. A (Doc. No.  22-2) at 4-9.

[9] Resp., Ex. A (Doc. No. 24-2) ¶ 10.

misconduct.[10]  Although Worrilow concluded that Jaglowicz "probably over stepped his authority in making this arrest," he also found that Jaglowicz was "most likely correct in using force to stop the suspect . . .".[11]  Worrilow recommended to the police liaison on the board of supervisors that Jaglowicz be reappointed.[12]

In his complaint, Jaglowicz claimed that when they terminated his employment, the defendants deprived him of procedural due process under the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the PTA.[13]  He also claimed Bethel Township breached its oral employment contract and failed to create a police pension fund in violation of the Municipal Police Pension Law ("MPPL").[14]

The parties conducted virtually no discovery.  The defendants moved for summary judgment on all claims.  Worrilow and the township supervisors also invoked qualified immunity.

Counsel for Jaglowicz conceded, at oral argument, that he cannot make out a due process claim under the Fifth Amendment, the Fourteenth Amendment based on a liberty interest, or the Equal Protection Clause.[15]  He also acknowledged that Jaglowicz

---

[10] Resp. at 5 ¶ 14.

[11] Mot. for Summ. J., Ex. A at 8-9.

[12] *Id.* at 2.

[13] 53 P.S. § 811, *et seq.*

[14] 53 P.S. §§ 767-778.  Jaglowicz cited § 895.101 in his complaint, which governs the minimum funding standards for municipal pension plans.

[15] Oral Arg. Tr. 2:13-16, 2:24-25, 16:1-7.

had not established a violation of the MPPL.[16]  He did not dispute that the record did not support a claim against Chief Worrilow.[17]  Consequently, the only remaining claims on summary judgment are under the PTA and the due process clause of the Fourteenth Amendment based on a property interest against Bethel Township and the five township supervisors, and for breach of contract against the township only.

### Standard of Review

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party.  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Bare

---

[16] *Id.* 13:22-15:25, 16:8-15.  In any event, the MPPL requires townships with police forces of "three or more full-time members" to establish a police pension fund.  53 P.S. § 767.  Because there is no evidence that Bethel Township had three or more full-time members, his claim under the MPPL cannot survive summary judgment.  Oral Arg. Tr. 5:12-25.

[17] *Id.* 28:23-29:8.

Case 2:15-cv-04902-TJS   Document 50   Filed 04/14/16   Page 5 of 15

assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment.  *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**The Police Tenure Act**

The PTA provides the following protections:

> No person employed as a *regular full time police officer* in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed.

53 P.S. § 812 (emphasis added).

The defendants maintain that even though Bethel Township is a township of the second class,[18] the PTA does not apply because the township has more than three members on its police force.   They rely on this language in the PTA:

> This act shall apply to each township of the second class, to each borough and township of the first class having a police force of less than three members and not subject to . . . the Borough Code . . . [or to] the First Class Township Code.

53 P.S. § 811.

---

[18] Mot. for Summ. J. at 3 ¶ 1.

The defendants interpret this section as limiting the PTA's application to police forces with "less than three members" regardless of township classification.  They argue the PTA does not apply because Bethel employed twenty police officers in 2014.[19]

The size of a second-class township's police force does not govern whether the PTA applies.  Section 812 provides that the PTA protects full-time police officers in "any township of the second class."  53 P.S. § 812.

The Pennsylvania Supreme Court, in explaining the purpose of the PTA, made clear that it applied to all second class townships:

> Evidently to remedy an obviously inequitable situation, the Legislature in 1951 passed the Police Tenure Act, which extended tenure to police forces of less than three members in boroughs, incorporated towns and townships of the first class and to *all police forces of townships of the second class*, *regardless of the number employed*.  This was an expression of public policy to grant job tenure to all police employed by such municipalities regardless of their political classification.

*Deskins v. Borough of W. Brownsville*, 131 A.2d 101, 102 (Pa. 1957) (quoting *McCandless Twp. v. Wylie*, 100 A. 2d 590, 592 (Pa. 1953))  (emphasis added); s*ee also Clark v. Twp. of Falls*, 890 F.2d 611, 614, 617 (3d Cir. 1989) (applying PTA to second class township with police force greater than three members); *Dombrosky v. Banach*, No. 3:09-2579, 2012 WL 1899656, at *9 (M.D. Pa. May 24, 2012) (holding the PTA applies to all police departments in second class townships regardless of size).

Contrary to the defendants' contention, the PTA applies to all second class townships, like Bethel Township, no matter how many police officers they employ. Having concluded that the PTA applies to Bethel Township, we must determine whether it applies to Jaglowicz.

---

[19] *Id.* at 11.

The PTA protects only a "regular full time police officer."  53 P.S. § 812.  The defendants do not dispute Jaglowicz was a "regular" police officer.  Instead, they argue that because Jaglowicz worked less than forty hours a week, he was a part-time employee who was not covered by the PTA.  Thus, the issue is whether Jaglowicz was considered a full-time police officer within the meaning of the PTA.

Bethel Township measures full-time work in terms of hours worked.  For purposes of the PTA, what constitutes full-time work is not measured by the hours worked, but by the officer's availability for work.

In enacting the PTA, the legislature intended to protect only regular police officers and not casual ones.  It distinguished between those hired to provide temporary services for special or unusual circumstances and those performing normal duties of municipal police functions.  *Deskins*, 131 A.2d at 102.  In other words, the PTA differentiates "a permanent employe from a transitory or seasonal employe."  *Petras v. Twp. of Union*, 187 A.2d 171, 174 (Pa. 1963).  The Pennsylvania Supreme Court has articulated the rule as follows: "[t]he test to be imposed therefore, is not the number of days, length of hours, or terms of employment but rather whether or not the duties were such that he was 'available for full employment,' that is on call at any and all times."  *Id.* (quoting *Harlan v. Washington Nat'l Ins. Co.*, 130 A.2d 140, 143 (Pa. 1957)).

The *Petras* Court, while mindful of the impact its decision would have on townships operating on limited budgets, still concluded that even officers working limited hours are entitled to the protection of the PTA where they are not employed "on account of special circumstances, unusual conditions or emergencies and it is stated and stipulated at the time of his employment."  *Id.* at 174.  The court construed the term "full-

time" to exclude a transitory or seasonal employee from the protection of the PTA. *Id.* (citing *Harlan*, 130 A.2d at 143).

Courts regularly use the *Petras* test to determine whether an officer was covered under the PTA. *Fernandes v. Borough of W. Pittston*, No. 3:07-2264, 2010 WL 3448066, at *1, *6 (M.D. Pa. Aug. 30, 2010) (allowing jury to decide whether police officer with 32-hour schedule who worked other jobs was a full-time officer based on his on-call response history); *Mullen v. Borough of Parkesburg*, 572 A.2d 859, 860-61 (Pa. Commw. Ct. 1990) (finding part-time borough police officer who worked shifts around second job as full-time city police officer was not a "regular full-time police officer" for the borough); *Droz v. Brownstown Borough*, 43 Pa. D. & C.2d 205, 206, 210 (Pa. Com. Pl. 1967) (finding police officer who worked only "a few hours each week" and was employed full-time at steel company was also a "regular full-time police officer" because he "was available and subject to call at any and all times"); *Masemer v. Borough of McSherrystown*, 34 Pa. D. & C.2d 669, 674 (Pa. Com. Pl. 1964) (finding police chief who "also acted as borough supervisor or maintenance man" was a regular full-time police officer because he was "at all times subject to call for police duties").

Jaglowicz performed the normal functions of a police officer. He did what any full-time police officer did. It is not clear whether he was available for duty at all times and on call at all times. If he was, he was protected by the PTA.

To support his claims that he was a full-time police officer,[20] Jaglowicz has produced time sheets, showing he worked shifts on all days of the week and often

---

[20] *See* Resp., Ex. A (Doc. No. 24-2) ¶ 2.

worked between 38 and 40 hours per week.[21]   There is no evidence that he held any other employment during the last year he was employed by Bethel Township.[22]

There is a genuine dispute whether Jaglowicz was required to be on call to work unscheduled times.[23]   According to Worrilow's affidavit, he scheduled officers for "a maximum of 32 hours per week,"[24] and they only worked more hours if "a coverage issue arose such as when someone would call out sick."[25]   Jaglowicz's timesheets reflect that he averaged more than 32 hours a week in 2014,[26] suggesting he was available for work beyond his scheduled times.   For instance, Jaglowicz appears to have worked an unscheduled eight-hour shift on January 30, 2014.[27]

Classifying a police officer as part-time does not necessarily place the township beyond the reach of the PTA.   A township employer cannot insulate itself from the PTA by limiting the hours or pay of its police officers.   The *Petras* court cautioned that the test is not the hours or days worked, noting:

---

[21] *See* Resp., Ex. G (Doc. No. 24-8) at 8, 9, 13, 17-24.

[22] In response to an interrogatory about his employment history, Jaglowicz noted three brief periods of additional employment during the five years he worked for Bethel Township.  He worked for the City of Coatesville police force from August 2013 to January 6, 2014 (approx. five months); the George W. Hill Correctional Facility from August 2013 to September 16, 2013 (approx. one month); and Longwood Gardens from September 18, 2007, to March 21, 2011 (approx. three-month overlap with Bethel Township employment).  Mot. for Summ. J., Ex. F (Doc. No. 22-3) at 5.  There is no evidence or assertion that Jaglowicz was employed elsewhere after his last reappointment to the department on January 6, 2014.  Mot. for Summ. J., Ex. B (Doc. No. 22-2) at 1, 4.

[23] Reply (Doc. No. 26) at 5.

[24] Mot. for Summ. J., Ex. A at 2.

[25] *Id.*

[26] Mot. for Summ. J. at 4 ¶ 13.

[27] Resp., Ex. G (Doc. No. 24-8) at 4, 25.

> The court can take judicial notice that the limited budget of most second class townships must necessarily result in limited hours of employment of its police officers for the low pay provided, but none the less, the officer for the limited hours required, enjoys the status of full time employment and [is] entitled to the protection of the Police Tenure Act . . . .

*Petras*, 187 A.2d at 174.

In *Deskins*, the Pennsylvania Supreme Court held that a borough-employer could not avoid the PTA by serially re-appointing a police officer for two-year terms. 131 A.2d at 101. In explaining why a police officer reappointed biannually was classified as a regular employee within the meaning of the PTA, the court stated:

> To construe the statute so as to uphold the position of the Borough Council would result in the emasculation of the protective provisions of the Act. Any municipality would be at liberty to nullify effectively the tenure law by simply appending time limitations to police employment contracts. We will not presume the legislature intended such an unreasonable result.

*Id.* at 102.

Because a reasonable jury could find that Jaglowicz's availability for work qualified him as a full-time officer under the PTA, we shall deny summary judgment on his claim under the PTA.

### Due Process

To establish a § 1983 claim based on the Fourteenth Amendment,[28] Jaglowicz must prove that he was deprived of a liberty or property interest under color of state law without due process. *Burns v. Pa. Dep't of Correction*, 544 F.3d 279, 284 (3d Cir. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Jaglowicz has conceded that he

---

[28] Jaglowicz had also asserted a due process claim under the Fifth Amendment. A due process claim under the Fifth Amendment applies only to the federal government. *Kelly v. Borough of Sayerville*, 107 F.3d 1073, 1076 (3d Cir. 1997). Jaglowicz does not allege any federal wrongdoing. Thus, his counsel conceded at oral argument that he has not made out a Fifth Amendment claim. Oral Arg. Tr. 2:13-14.

had no liberty interest and is proceeding solely on the basis that he was deprived of his property interest.

Whether a public employee has a property interest in his employment sufficient to establish a due process claim is a question of state law.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).  Public employees in Pennsylvania have a property interest in their employment if they can "establish a legitimate expectation of continued employment through either a contract or a statute."  *Pipkin v. Pa. State Police*, 693 A.2d 190, 192 (Pa. 1997).

The PTA establishes a property interest in continued employment as a police officer.  *See, e.g.*, *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 449 (M.D. Pa. 2009).  Indeed, the defendants acknowledge that if Jaglowicz is protected by the PTA, he may assert a Fourteenth Amendment due process claim.[29]   Therefore, if the PTA applies to Jaglowicz, he has a property interest in his employment to support a procedural due process claim.

Due process requires notice and an opportunity to respond.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Prior to termination, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Loudermill*, 470 U.S. at 546).   A pre-termination hearing, no matter how brief and informal, is required.  *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (citations omitted).

---

[29] Oral Arg. Tr. 3:5-20.

The defendants contend that Jaglowicz was accorded procedural due process.[30] The facts suggest otherwise. Although Worrilow interviewed Jaglowicz about the Taser incident,[31] Jaglowicz never received notice that the township was considering taking action regarding his employment as a result of the citizen's complaint.[32] At the time of the interview, Jaglowicz had no notice that the investigation of the citizen's complaint could lead to his being denied reappointment. Consequently, other than explaining his conduct during what could have been discerned as a routine internal inquiry, Jaglowicz was not given an opportunity to mount a full defense.

**Breach of Contract**

Jaglowicz claims Bethel Township breached its oral employment contract by failing to reappoint him to the police force.[33] The township supervisors verbally reappointed him at the annual reorganization meeting on January 6, 2014.[34] The minutes of this meeting reflect that he was appointed for a one-year term as an "at will" employee.[35] Jaglowicz was not terminated prior to the expiration of the one-year term, and there was no promise of reappointment at the conclusion of the one-year period. Thus, Jaglowicz has not made out a breach of contract claim.

---

[30] Reply ¶ 13.

[31] Mot. for Summ. J., Ex. A at 5-6.

[32] Resp., Ex. A ¶ 10.

[33] Resp. at 10.

[34] Mot. for Summ. J., Ex. B at 1, 4.

[35] *Id.* at 2.

**Qualified Immunity**

Chief Worrilow and the five township supervisors invoke qualified immunity. Jaglowicz having conceded that Worrilow has no liability, we consider qualified immunity for the five township supervisors.

Government officials are immune from suit when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In evaluating a qualified immunity defense, we ask two questions. First, do the alleged facts, viewed in a light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right? *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). Second, was the right "clearly established" at the time of the challenged conduct? *Id.* at 168-69.

We may address these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In other words, if we find that the alleged right was not clearly established, the inquiry ends and the official is entitled to qualified immunity. To deny immunity, there must be sufficient precedent at the time of the action to put the official on notice that his or her conduct was prohibited. *Mammaro*, 814 F.3d at 169 (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

The township supervisors reasonably believed that the PTA did not apply because they genuinely considered Jaglowicz a part-time officer. In 2011, the Board of Supervisors publically debated whether to hire a core of full-time officers, noting that

doing so would trigger police pension requirements.[36]   In arguing in favor of hiring full-time officers, one supervisor explained, "We are the only part-time department in the state of PA providing 24/7 coverage."[37]   In the face of community opposition, the supervisors did not vote on the matter to convert to a full-time police force.[38]   The status of the members of the police force, in the view of the township and its supervisors, remained part-time and continued to the time of Jaglowicz's last appointment in 2014.

The township supervisors reasonably believed the township was not covered by the PTA when they did not reappoint Jaglowicz because the police force was part-time. They reasonably believed their action was legal.   *See, e.g.*, *Fernandes*, 2010 WL 3448066, at *5 ("Absent the operation of [the PTA], plaintiff would be an at-will employee and not subject to due process protections.") (citation omitted).   Therefore, the supervisors are entitled to qualified immunity.

### Monell Claim

In order to impose liability on local governments, a plaintiff must prove that an official policy or custom caused a constitutional violation.   *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978)).   Official municipal policy includes the acts of its "policymaking individuals." *Id.* at 61.

The township had a policy and custom of appointing police officers annually on a part-time basis in order to avoid the legal consequences of treating them as full-time

---

[36] Resp., Ex. F (Doc. No. 24-7) at 4.

[37] *Id.*

[38] *Id.* at 4-10.

police officers.  Each year the entire police force was appointed to a one-year term.  No one can dispute this appointment procedure was municipal policy.

Contrary to Bethel's argument that there is an insufficient basis for municipal liability, we conclude there is.  Anyone not reappointed by the supervisors was effectively terminated pursuant to the policy.  If the termination was without due process, it was the result of the policy.  Therefore, we shall deny summary judgment on the Monell claim.

## Conclusion

Because a reasonable factfinder could find that Jaglowicz was terminated in violation of both the PTA and the Fourteenth Amendment, we shall deny Bethel Township's motion for summary judgment regarding those claims, and grant it as to the remaining claims.  We shall grant the individual defendants' motion for summary judgment.